UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>— against —<br><br>JUAN ESPINAL,<br><br>　　　　　　　Defendant. | **08-cr-242 (ARR)**<br>**09-cr-683 (ARR)**<br>**16-cr-349 (ARR)**<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

Defendant Juan Espinal has moved, pursuant to 18 U.S.C. § 3582(c)(1)(A), for an order modifying his term of imprisonment in the wake of the COVID-19 pandemic. The government opposes. For the reasons set forth below, Espinal's motion is denied without prejudice.

## BACKGROUND

The facts underlying this motion arise from three related criminal cases having docket numbers 08-cr-242, 09-cr-683, and 16-cr-349. In 2008, Espinal was charged in this court with conspiracy to commit robbery and use of a firearm in relation to a crime of violence. *See* Indictment, Docket No. 08-cr-242, ECF No. 49; *see also* Superseding Indictment, ECF No. 113. He pleaded guilty to these charges. *See* Sealed Min. Entry, May 14, 2009, ECF No. 168. In 2009, Espinal was charged—in the United States District Court for the Southern District of New York— with a drug conspiracy. *See* Information 1–2, Docket No. 09-cr-683, ECF No. 1-2. He pleaded guilty and agreed to the transfer of jurisdiction to this district. *See* Consent to Transfer Jurisdiction 1–2, ECF No. 1. On December 10, 2010, Judge Townes sentenced Espinal in both cases. *See* Min. Entry, Dec. 10, 2010, Docket No. 08-cr-242, ECF No. 405; Min. Entry, Dec. 10, 2010, Docket No.

09-cr-683, ECF No. 3. The court sentenced Espinal to thirty-six months' imprisonment in each case—to run concurrently—and five years of supervised release. Min. Entry, Dec. 10, 2010, Docket No. 08-cr-242; Min. Entry, Dec. 10, 2010, Docket No. 09-cr-683.

In November 2015—after Espinal's release from prison and during his term of supervised release—Espinal was arrested on drug conspiracy charges. *See* Sealed Violation of Supervised Release Report 5–6, Docket No. 08-cr-242, ECF No. 1183-1. In March 2017, Espinal pleaded guilty before me to one count in a new criminal case stemming from these charges, *see* Min. Entry, Docket No. 16-cr-349, ECF No. 26, and to violating his term of supervised release, *see* Min. Entry, Docket No. 08-cr-242, ECF No. 1268; Min. Entry, Docket No. 09-cr-683, ECF No. 13. On August 16, 2017, I sentenced him to sixty-six months' imprisonment and three years of supervised release in the criminal case, *see* Min. Entry, Docket No. 16-cr-349, ECF No. 31, to be followed by a consecutive sentence of twenty-four months' imprisonment for the violation of supervised release, *see* Min. Entry, Docket No. 08-cr-242, ECF No. 1278; Min. Entry, Docket No. 09-cr-683, ECF No. 14.

On January 17, 2020, I denied Espinal's motion to vacate under 28 U.S.C. § 2255. *See* Opinion & Order, Docket No. 08-cr-242, ECF No. 1355; Docket No. 09-cr-683, ECF No. 22; Docket No. 16-cr-349, ECF No. 40. On February 12, 2020, I denied Espinal's motion for reconsideration of that denial. *See* Opinion & Order, Docket No. 08-cr-242, ECF No. 1365; Docket No. 09-cr-683, ECF No. 24; Docket No. 16-cr-349, ECF No. 42. Espinal has filed a notice of appeal with respect to my denials of his § 2255 motion and his motion for reconsideration. *See* Notice of Appeal, Docket No. 08-cr-242, ECF No. 1367; Docket No. 09-cr-683, ECF No. 25; Docket No. 16-cr-349, ECF No. 43. He now moves for a reduction in his sentence to time served, asking that I order his immediate release from prison—specifically, the Low Security Correctional

2

Institution in Allenwood, Pennsylvania—because of the COVID-19 public health pandemic. *See* Mot. for Sentence Reduction, Docket No. 08-cr-242, ECF No. 1371; Docket No. 09-cr-683, ECF No. 26; Docket No. 16-cr-349, ECF No. 44 ("Def.'s Mot."). The government opposes.

## DISCUSSION

As a preliminary matter, Espinal's appeal of my denials of his § 2255 motion and his motion for reconsideration is currently pending. While neither party has raised this issue, I acknowledge that, to the extent that the filing of this notice of appeal might have divested me of the authority to grant the instant motion, I maintain the authority to deny it. *See* Fed. R. Crim. P. 37(a)(2); *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *2 (S.D.N.Y. Apr. 10, 2020) ("[Rule 37] allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.").

The First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons warrant" such release. 18 U.S.C. § 3582(c)(1)(A)(i). The statute reads:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). Thus, there are four prerequisites to a court's granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights with the Bureau of Prisons ("BOP"). § 3582(c)(1)(A). Second, the court must find that

"extraordinary and compelling reasons warrant" release. § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in 18 U.S.C. § 3553(a). § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. § 3582(c)(1)(A)(i).

## Exhaustion

Espinal claims that he petitioned the warden of his facility for his release to home confinement on March 26 and April 3, 2020. Def.'s Mot. 2. The warden denied his request. *Id.* Espinal did not appeal the denial but rather asserts that "any further attempts to exhaust his administrative remedies will be met with the exact same results." *Id.* As such, he argues that I should waive the exhaustion requirement and consider his motion on the merits. *See id.*

Assuming, without deciding, that Espinal had satisfied the exhaustion requirement or that I could waive the exhaustion requirement in this case, I would deny Espinal's motion on the merits. Thus, I do not address the exhaustion issue any further.

## Extraordinary and Compelling Reasons for Release

In order for a court to grant compassionate release, it must find that "extraordinary and compelling reasons warrant" such release. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG"); *see United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2 (D. Minn. July 25, 2019). Under this Policy Statement, "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness[.]" USSG § 1B1.13 cmt. n.1(A)(i). Alternatively, extraordinary and compelling reasons exist when "[t]he defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive

impairment, or . . . experiencing deteriorating physical or mental health because of the aging process[.]" USSG § 1B1.13 cmt. n.1(A)(ii). Such a condition must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," and it must be one "from which [the defendant] is not expected to recover." *Id.* Further, extraordinary and compelling reasons may instead exist based on the defendant's advanced age—requiring that the defendant be at least sixty-five years old—or based on certain family circumstances. *Id.* cmt. n.1(B)–(C). Finally, extraordinary and compelling reasons may exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists . . . an extraordinary and compelling reason other than, or in combination with," the other listed reasons in the Guideline. *Id.* cmt. n.1(D). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. n.2.

This Policy Statement is "anachronistic" because it pre-dates the First Step Act itself. *Ebbers*, 2020 WL 91399, at *4. Some district courts have concluded that the court may make an "independent assessment" of whether "extraordinary and compelling reasons" for release are present, looking to the Policy Statement only for "guidance." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release."). *But see Ebbers*, 2020 WL 91399, at *4 (deeming Policy Statement "helpful in defining a vague standard" and concluding that its "descriptions of 'extraordinary and compelling reasons' remain current.").

Espinal cites the physically cramped condition at his facility and the lack of robust testing and screening for COVID-19 as extraordinary and compelling reasons for his release. *See* Def.'s

5

Mot. 1. While I acknowledge that COVID-19 poses a risk to the imprisoned population in general, Espinal has presented me with no basis on which I can conclude that his particular risk is exceptional. Espinal does not claim to have any pre-existing conditions that place him at a heightened risk of suffering complications from COVID-19, nor does he claim that confirmed cases of COVID-19 are present within his detention facility. Espinal is relatively young, at thirty-eight years old. *See* Presentence Report at 2, Docket No. 16-cr-349, ECF No. 27. At the time that his presentence report was compiled in July 2017, Espinal reported that he was "in good physical health" and that he was "not prescribed any medications." *Id.* ¶ 40. His sister corroborated as much. *Id.* Espinal has not provided me with any more recent medical history that would suggest that COVID-19 poses a heightened risk to him in particular.[1] Absent evidence that the COVID-19 pandemic poses a heightened risk to Espinal in particular, rather than to the imprisoned population in general, and considering Espinal's young age and good health, I cannot conclude that the "extraordinary and compelling reasons" element is satisfied. *See United States v. Washington*, No. 14-CR-215, 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for release when defendant submitted no medical evidence showing that COVID-19 posed increased risk to him, despite presence of COVID-19 at defendant's facility); *United States v. D'Acunto*, No. 18 CR 14 (VM), 2020 WL 1904007, at *2 (S.D.N.Y. Apr. 16, 2020) (finding no extraordinary and compelling reasons for release when defendant did not argue that COVID-19 would exacerbate his underlying kidney disease or otherwise pose heightened risk

---

[1] The government asserts that Espinal has a body mass index ("BMI") that is "slightly above normal." Government's Mem. of Law in Opp. to Def.'s Mot. 6, 24 n.13, Docket No. 08-cr-242, ECF No. 1372; Docket No. 09-cr-683, ECF No. 27; Docket No. 16-cr-349, ECF No. 45. While the Centers for Disease Control have identified "[s]evere obesity" as a risk factor for COVID-19 complications, it has not identified slight or moderate obesity as such. *Coronavirus Disease 2019 (COVID-19) At Risk for Severe Illness* (last updated Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

to him); *United States v. Pinto-Thomaz*, No. 18-cr-579 (JSR), 2020 WL 1845875, at *2–3 (S.D.N.Y. Apr. 13, 2020) (recognizing that concerns about spread of COVID-19 in crowded prison were justified but finding no extraordinary and compelling reasons when defendants were "no different from a host of other prisoners" and absent evidence of widespread transmission in defendants' facilities); *United States v. Simmons*, No. 15 Cr. 445 (PAE), 2020 WL 1847863, at *1 (S.D.N.Y. Apr. 13, 2020) (finding no extraordinary and compelling reasons for release when defendant was not in high-risk category for COVID-19 and absent evidence that COVID-19 was present within defendant's facility).[2]

Section 3553(a) Factors and Sentencing Commission Policy Statements

The First Step Act requires that I consider the factors set forth in 18 U.S.C. § 3553(a) before deciding to grant compassionate release. *See* § 3582(c)(1)(A). Section 3553(a) requires sentencing courts to consider what is "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]." § 3553(a). In particular, courts must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) [the kinds of sentences and sentencing range provided for in the USSG]

---

[2] The cases that Espinal has cited in arguing that I should find that extraordinary and compelling reasons warrant his release are inapposite, as they all involved defendants with pre-existing health conditions. *See* Opinion & Order 1, *United States v. Sawicz*, No. 08-cr-287 (ARR) (E.D.N.Y. Apr. 10, 2020), ECF No. 66; Ruling 1–2, *United States v. Colvin*, No. 3:19cr179 (JBA) (D. Conn. Apr. 2, 2020), ECF No. 38; Decision & Order 12, *United States v. Resnick*, No. 14 CR 810 (CM) (S.D.N.Y. Apr. 2, 2020), ECF No. 461; Mot. for Reduction in Sentence 1–2, 5 n.9, *United States v. Brannan*, No. 4:15-CR-80-01 (S.D. Tex. Apr. 2, 2020), ECF No. 285.

      (5) any pertinent [Sentencing Commission policy statement]
      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
      (7) the need to provide restitution to any victims of the offense.

*Id.* In considering these factors on a motion for compassionate release, the court "should assess whether [they] outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *Ebbers*, 2020 WL 91399, at *7.

Because I would need to find that extraordinary and compelling reasons justify release in order to grant Espinal's motion, and I have found that that element is not satisfied, I do not need to conduct an analysis of the § 3553(a) factors in this case. *See* § 3582(c)(1)(A)(i). Nonetheless, I note that with respect to the § 3553(a) factors, Espinal argues merely "that nothing in Section 3553(a) counsel[s] against granting this motion." Def.'s Mot. 2. This conclusory argument falls far short of demonstrating that the § 3553(a) factors weigh in favor of release. I also acknowledge the government's concern that the fact that Espinal is currently serving a sentence for a crime that he committed while on supervised release suggests that early release would undermine deterrence here. *See* Government's Mem. of Law in Opp. to Def.'s Mot. 26, Docket No. 08-cr-242, ECF No. 1372; Docket No. 09-cr-683, ECF No. 27; Docket No. 16-cr-349, ECF No. 45.

In addition, I need not analyze whether release is consistent with the Sentencing Commission's policy statements because the extraordinary and compelling reasons element is not satisfied in this case. *See* § 3582(c)(1)(A)(i). I note that the pertinent Sentencing Commission policy statement requires that I determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG § 1B1.13(2). Espinal has set forth no argument to this effect.

## CONCLUSION

For the reasons set forth above, Espinal's motion is denied. Because the circumstances

surrounding the COVID-19 pandemic are rapidly evolving, I deny the motion without prejudice.

SO ORDERED.

Dated: May 1, 2020 _____/s/_____
      Brooklyn, NY                                             Allyne R. Ross
                                                               United States District Judge